## DISTAD v. SHANKLIN.

1. In an action for the value of personal property which plaintiff was to receive from the owner of a store property for effecting an exchange of land of defendant for the store property, and which plaintiff had not received because defendant refused to complete the trade, the issue being whether plaintiff had acted as defendant's agent, it was not error to refuse to permit plaintiff to testify that defendant instructed an agent of his by letter not to pay plaintiff anything, the nonproduction of the writing not being accounted for, and it being the best evidence.

2. Any error in the ruling was harmless, plaintiff having testified that defendant refused to pay him anything.

3. Evidence as to the value of the land was properly excluded as immaterial.

4. It was proper to exclude evidence that it is the custom of land agents to get the best possible terms from the owner, and then get all possible from the other party.

5. Where prior to the second trial of a case, the plaintiff had died, and it was stipulated that the testimony of plaintiff and defendant might be read in evidence, the stipulation did not prevent the defendant from testifying.

6. Where there is offered in evidence a writing purporting to be a copy of a telegram from plaintiff to defendant, and it is shown that the copy had been put in evidence without objection at a former trial, and that a letter to plaintiff acknowledged a telegram reading the same as the copy, it was proper to admit the copy.

(Opinion filed April 1, 1902.)

Appeal from circuit court, Brule county. HON. FRANK B. SMITH, Judge.

Action by Mary Distad against Harry A. Shanklin. From a judgment for defendant, plaintiff appeals. Affirmed.

*S. H. Wright* and *B. C. Huddle,* for appellant.

*James Brown,* for respondent.

CORSON, J. This is an appeal by the plaintiff from a judgment in favor of the defendant and the order of the court denying a new trial. The case was formerly before this court on an appeal by the defendant from an order granting a new trial, and the opinion is reported in 11 S. D. 1, 75 N. W. 205. The action was brought by the plaintiff to recover as damages for breach of contract the value of certain personal property which the plaintiff was to receive upon an exchange of a section of land in Brule county, owned by the defendant, for a certain store and warehouse and lots in Alcester, Union county, in this state. It is claimed by the plaintiff that he made an oral agreement with the defendant on the 19th of August, 1896, whereby the defendant agreed that, if a certain store building and warehouse, with the lots upon which the same stood, came up to the representations of the plaintiff, the defendant would exchange therefor his equity in the section of land in Brule county; that the Alcester property was as represented by the plaintiff, but the defendant refused to complete the exchange, and by reason thereof the plaintiff was deprived of the said personal property of the value of $1,000, which he was to receive from the owners of the Alcester property in addition to the store, warehouse, and lots which would be transferred to the defendant. The defendant, in his answer, in effect denied that the Alcester property was of the character and value represented by the plaintiff, and alleged that the plaintiff attempted to defraud him by contracting to receive

from the Alcester parties a large amount of personal property in addition to the store, warehouse, and lots, without the knowledge of the defendant, and that, as soon as the defendant learned of the attempted fraud, he refused to have anything further to do with the plaintiff with reference to the said trade. The defendant further alleges in his answer that he agreed with the plaintiff that, in case he made such exchange in properties, he would pay to the plaintiff fifty dollars as commission or compensation as the agent of this defendant.

It is contended on the part of the plaintiff that the court erred in sustaining defendant's objection to the following testimony of M. E. Distad: "There was some talk of $50 and $25, but the final windup was that he refused to pay anything, and so instructed his agent that went to look at the property, in writing." It will be noticed that the witness testified that the defendant so instructed his agent in writing. The objection was that the writing was the best evidence. The ruling of the court was undoubtedly correct. The instruction spoken of by the witness being in writing, the writing should have been produced, or its nonproduction accounted for, before the parol testimony could have been admitted. Again, if there was error in the ruling of the court, it was not prejudicial, as he had stated positively that the defendant refused to pay him any commission; and the fact that he had so instructed his agent went no further than to corroborate the witness in his statement as to a fact about which there seems to have been no controversy, namely, that the plaintiff had not paid him anything on account of the transaction.

Again, the plaintiff sought to prove on the trial the value of the Brule county land, which plaintiff alleges was to be exchanged for the Alcester property. This evidence was objected to as ir-

relevant and immaterial, and was excluded. The court committed no error in excluding this evidence. It was not material in this case what the value of the Brule county land was, as that was not an issue in the case. The two issues involved on the trial seem to have been: Was the Alcester property of the character and value plaintiff represented it to be, and was the contract between the plaintiff and the defendant one constituting the plaintiff the agent of the defendant? The plaintiff also sought to show that there was a custom on the part of land agents to get the best terms from the owner, and then get all he could from the other party. This was objected to as immaterial and irrelevant, and we think was properly excluded. The evidence did not tend to sustain or defeat any of the issues in the case, and was therefore entirely immaterial. As the plaintiff had alleged a contract, it was necessary for him to prove the contract substantially as alleged. And the contention of the appellant that the testimony tended to negative the theory of the testimony of the defendant that plaintiff agreed to effect the exchange for a commission is untenable.

Plaintiff further contends that the court erred in overruling plaintiff's objection to permitting the defendant to testify in view of the stipulation entered into in the case. Since the former trial of this case the plaintiff had died, and prior to the second trial the following stipulation had been entered into: "It is hereby stipulated by counsel for the respective parties that * * * evidence of M. E. Distad and Harry A. Shanklin * * * may be read in evidence just as though its correctness and authenticity were testified to in open court, * * * each side, however, reserving the right to interpose the usual objection relative to competency, materiality, relevancy, and proper cross-examination." Under this stipulation the testimony of the plaintiff was read in evidence,

but the defendant, appearing in person at the trial, was permitted by the court to testify in his own behalf, notwithstanding the stipulation. Had Shanklin not been present at the trial, his former testimony under the stipulation might have been read in evidence; but the stipulation did not have the effect to prevent Shanklin, if present at the trial, from testifying in his own behalf, and we discover no error in the court's ruling in permitting him to so testify.

It is further contended on the part of the appellant that the court erred in overruling plaintiff's objection to the introduction of a certain telegram marked "Ex. 1," which reads as follows: "Chamberlain, S. D., August 15th, 1896. To H. A. Shanklin, Toledo, Iowa: Can get store building, value $2,500, rented for $20 per month, good town fifty miles north of Sioux City, for your equity in land. You pay interest to date. Answer. [Signed] M. C. Distad." This telegram was objected to on the ground that the same was not the best evidence, that no proper foundation had been laid, that it could not be introduced in evidence until it had been shown that it was originally sent by the person purporting to have sent it, or by some one authorized by him to deliver the same to the telegraph company at Chamberlain. The defendant thereupon stated that the telegram was offered in evidence without objection on the former trial of this case, that M. E. Distad is now dead, and that under the rule of the telegraph office original telegrams after six months are destroyed. The court thereupon remarked that it was an exhibit at the former trial. It was shown that such exhibit was received in evidence without objection to its admission, and it was admitted. It further appeared that the defendant Shanklin replied to the telegram August 15, 1896, and directed his letter to M. E. Distad at Chamberlain, S. D., and in his letter he says: "I have your telegram of today. * * * Your dispatch reads

as follows:" and then he gives a copy of the telegram which is the same as "Ex. 1." We are of the opinion that, in view of the fact that a copy of the telegram had been received without objection on the former trial, at which M. E. Distad seems to have been a witness, and the further fact that the telegram is copied in the letter of Shanklin to Distad, and does not, so far as the record discloses, seem to have been questioned, the copy was properly admitted in evidence. It may reasonably be presumed that, if the telegram had not been authentic, Distad would have repudiated it by reply to the letter of Shanklin, and also in the evidence on the former trial of the action. This case does not come within the rule laid down in Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942, 44 L. R. A. 438, as that case was a case of reply received to a telegram, and we are not inclined to extend the doctrine of that case. Undoubtedly, there should be some evidence that the telegram sought to be introduced in evidence was in fact sent by the party by whom it purports to have been sent; but as, in this case, where the original, under the rule of the office, had been destroyed, secondary evidence is admissible; and the evidence in this case, as before stated, was, in our view, sufficient to establish the fact that the telegram offered was a transcript of the original sent by Distad. In speaking on this subject the court of appeals of New York in Steamship Co. v. Otis, 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221, uses the following language: "We turn now to the telegrams alleged to have been sent by Otis. While the transcript delivered to the person addressed is for some purposes, as between him and the sender, deemed the original, it never can be so without competent proof that the alleged sender did actually send, or authorize to be sent, the dispatches in question. The primary and original evidence of that fact would be the telegram itself in the handwriting of the sender, or of an

agent shown to have been duly authorized. But when it appears that the telegram has been destroyed by the company, secondary evidence of the essential fact may be given. The general term have put great stress upon the circumstances that when on the witness stand the defendant did not dispute the authenticity of the telegrams, and thence reasoned that if improperly admitted at first they became competent afterward. There is much of force in the argument, but we think there was some evidence of genuineness of a different character. Exhibit 4 is an agreed cipher, which identifies it with a certainty at least equal to that of a proved handwriting."

We have not overlooked the other assignments of error, but we are of the opinion that the court committed no error in its rulings on the trial or in its charge to the jury.

The judgment of the court below and the order denying a new trial are affirmed.